UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JVIS-USA, LLC, a Michigan limited liability company, | Case No. 20-10801 |
| Plaintiff, | Stephanie Dawkins Davis<br>United States District Judge |
| v. | |
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation; AVNET, INC., a New York corporation; and FUTABA CORPORATION OF AMERICA, an Illinois corporation, | |
| Defendants. | |
| _____ / | |

**ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION TO EXPEDITE HEARING (ECF No. 9) and DENYING PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ISSUANCE OF A SHOW CAUSE ORDER (ECF No. 13)**

**I.     INTRODUCTION AND PROCEDURAL HISTORY**

This case is set against the backdrop of world-wide shortages in the global semiconductor market. (ECF No. 21-5). Defendant Futaba contracted with plaintiff JVIS to supply it with printed circuit board assemblies (PCBAs). PCBAs are electronic control units that JVIS incorporates into "center stack assemblies" that it sells to its customer, Mayco, International, LLC, who in turn supplies Stellantis, N.V. (formerly known as FCA, US, LLC) for various Jeep, Dodge, and Chrysler brand vehicles. In order to manufacture the PCBAs, Futaba purchases

1

component semiconductors from defendant Avnet, which is the distributor for defendant NXP, the manufacturer of the semiconductors. (ECF No. 19-1, Ex. 6). NXP has been unable to manufacture a sufficient quantity of semiconductors for its customer, Avnet (among others), because of the global shortage of semiconductors resulting from the downward effects of COVID on semiconductor production, compounded by a recent winter storm that affected its manufacturing plant in Texas. (ECF Nos. 21-6, 21-10). JVIS has sued defendants variously for breach of contract, specific performance, tortious interference with a business relationship and for a declaratory judgment in an effort to obtain an adequate supply of PCBAs for its customer, Mayco.

Defendants removed this matter to federal court on April 9, 2021. (ECF No. 1). JVIS filed a motion for temporary restraining order prior to removal, which was refiled in this court on April 12, 2021. (ECF No. 13). After a telephone conference with the parties on April 12, 2021, the court set a briefing schedule and set a hearing for April 16, 2021. JVIS also filed an emergency motion to expedite the hearing on its motion for temporary restraining order. (ECF No. 9). That motion is **GRANTED**.

Having reviewed the parties' written submissions and heard oral argument, and for the reasons set forth on the record during the hearing and contained herein, the motion for temporary restraining order is **DENIED**.

## II. ANALYSIS AND CONCLUSIONS

### A. Legal Standard

In determining whether injunctive relief is proper, the court considers four factors: (1) whether the plaintiff has a strong likelihood of success on the merits; (2) whether plaintiff has shown that irreparable injury will occur without an injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Although no single factor is controlling, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal.").

Plaintiff bears the burden of demonstrating entitlement to injunctive relief, and the burden is a heavy one because injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir.

2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)). A plaintiff must always, however, show irreparable harm before an injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

B. <u>Likelihood of Success on the Merits</u>

As to JVIS's breach of contract claims against NXP and Avnet, there is little likelihood that JVIS will succeed on the merits of these claims. There is no dispute that JVIS has no written contract with NXP and Avnet. Where a party admits that there is no written contract for the sale of goods, that ends the inquiry and there is no claim. *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 718 (6th Cir. 2018) (affirming the trial court's grant of summary judgment in favor of defendant automotive parts supplier where there is "no writing whatsoever –not even one that contains a general quantity term"). And any claimed oral contract for the purchase of goods is barred by the Michigan Uniform Commercial Code. More specifically, the Michigan statute of frauds bars enforcement of an oral

contract for the sale of goods over $1,000. Mich. Comp. Laws § 440.2201. No one disputes that the components at issue here are "goods." Further, while the specific prices of parts sought by JVIS were redacted in the copy of the purchase order attached to its motion, counsel for JVIS acknowledged during the hearing that, inasmuch as there are several thousand microprocessors yet to be delivered, the aggregate cost of the parts at issue exceed $1,000.[1] (ECF No. 13, PageID.322) ("Ten days after Plaintiff's demand for assurances, on March 26, 2021, NXP reduced the amount of components earmarked for JVIS from 42,000 to 27,000."). Given that an oral contract for the sale of goods in excess of $1000 is unenforceable under the Michigan UCC, JVIS is unlikely to succeed on the merits of its breach of contract claims against NXP and Avnet.

As to JVIS's breach of contract claim against Futaba, the parties acknowledge the existence of a contract but dispute whether Futaba's performance would be excused by operation of the force majeure provision found in Futaba's purchase order ("PO"). Indeed, JVIS argues that its own PO, which contains no such provision, is controlling. The court need not engage any analysis of this "battle of the forms" because the Michigan UCC provides the answer to the parties' dispute. This is so because even assuming for the sake of argument that

---

[1] The court does not find persuasive counsel's argument that it should consider the cost of each individual microprocessor, which is estimated to be around $2 apiece.

5

the JVIS PO constitutes the entire contract, it is silent on force majeure occurrences. (ECF No. 13-2). Nonetheless, its PO does provide that the remedies set forth therein are not exclusive but are "in addition to any other" remedies "allowed by applicable law." (*Id*. at PageID.350). Those remedies would include the UCC's impracticability provision, codified at Mich. Comp. Laws § 440.2615. Michigan's UCC Article 2 recognizes impracticability "as a defense to an action for breach of a sales contract under the [UCC]." *Cleveland-Cliffs Iron Co. v. Chicago N.W. Transp. Co*., 581 F.Supp. 1144, 1151 (W.D. Mich. 1984) (citing Mich. Comp. Laws § 440.2615). Under UCC § 2-615, the "[d]elay in delivery or nondelivery in whole or in part by a seller ... is not a breach of [its] duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made[.]" Mich. Comp. Laws § 440.2615.

Evidence in the record demonstrates that major sources of the global semiconductor supply have suffered unforeseen shutdowns in recent months due to a number of factors including extreme weather events. (ECF No. 19-1, Exs. 1-5). Neither JVIS nor Futaba anticipated a 100-year ice storm in Texas at the time the PO was issued. The ice storm interrupted the supply of gas and electric utilities to NXP's Austin, Texas plant, resulting in a total shutdown of several weeks. (ECF No. 19-1, Ex. 2; ECF No. 19-1, Ex. 6 at ¶ 11). Prior to these hazards, global

supply chains suffered tremendous upheavals as a result of the Covid-19 pandemic. The defendants provided evidence by way of affidavit that these events have prevented Futaba "from securing supplies necessary to [its]performance." *See* Mich. Comp. Laws § 440.2615, Cmt. 4. In contrast, JVIS's allegations that NXP reallocated microprocessor production to other customers is not supported by any affidavit or a verified complaint *based on personal knowledge*. As such, there is scant evidentiary value in these bare allegations. Accordingly, the court finds that JVIS is unlikely to succeed on the merits of its breach of contract claim against Futaba. And, if the breach of contract claim fails, so too does its claim for specific performance because specific performance is a remedy, not a separate cause of action. Given that the court has found JVIS unlikely to succeed on its breath of contract claim, it would not be entitled to the remedy of specific performance. *See e.g.*, *Luxury Limousine, Inc. v. Nat'l Indem. Co.*, 2019 WL 3714458, at *2 (E.D. Mich. Aug. 7, 2019) ("Although characterized as a separate claim in the complaint, specific performance is an equitable remedy, not a cause of action.") (citing *Ruegsegger v. Bangor Twp. Relief Drain*, 127 Mich. App. 28, 30-31 (1983)).

Finally, as to JVIS's tortious interference claim against Avnet and NXP, it has provided no evidence that any party acted in an unjustified or malicious manner in order to interrupt the contract between JVIS and Futaba. "[O]ne who alleges tortious interference with a contractual or business relationship must allege

7

the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Formall, Inc. v. Community Nat'l Bank of Pontiac*, 166 Mich. App. 772, 779 (1988). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R L Polk Co.*, 193 Mich. App. 1, 12-13 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l v. Intermet Int'l Corp.*, 251 Mich. App. 125, 131 (2002). Here, JVIS has not offered evidence of affirmative wrongful acts by Avnet or NXP. And further, defendants proffer evidence to the contrary. *See* Frezon Affidavit, ECF No. 21-6, Baehr Declaration, ECF No. 21-10, Krank Declaration, ECF No. 18-2, and Monroe Declaration, ECF No. 18-3.

    For all of these reasons and those stated on the record, the court finds that JVIS is unlikely to succeed on the merits of its breach of contract and tortious interference claims. While such a finding is ordinarily fatal to a request for injunctive relief, the court will address the other factors. *See Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal.").

C. <u>Irreparable Harm</u>

JVIS's allegations make it clear that its damages are calculable and compensable. JVIS complains of a specific shortfall of several thousand PCBAs spread over Q2 2021. (ECF No. 13, PageID.325-326). This makes its injury quantifiable and compensable, just like that in *Automotive Mexico Body Sys. v. Pittsburgh Glass Works, LLC*, 2015 WL 6503422, at *2 (E.D. Mich. Oct. 28, 2015). Unlike the defendant in *Eberspaecher N. Am., Inc. v. Nelson Global Prods., Inc.*, 2012 WL 1247174, at *2 (E.D. Mich. Apr. 13, 2012), Futaba does not have a ready supply of parts that it could ship to JVIS if it chose to.

Regarding its alleged loss of goodwill and reputational harm, JVIS provides no affidavit testimony or other evidence: (1) that JVIS will lose its supply contract with its customer if Futaba does not supply it with more than the 27,000 PCBAs Futaba presently expects to supply during Q2 2021; (2) that its customer will reduce future orders from JVIS; (3) that JVIS will lose business from any other automotive OEM; or (4) that JVIS faces an imminent threat of bankruptcy based on the reduced Q2 supply of PCBAs. The drought of semiconductors is a global phenomenon. To the extent that JVIS cannot be supplied with necessary parts, other suppliers are suffering the same fate. There is no evidence that its relationships will be permanently impacted or impacted any differently than other

9

suppliers experiencing the same shortfall in supply. Absent evidence of irreparable harm, injunctive relief may not issue. *Friendship Materials, supra*.

      D.      <u>Balance of the Harms and the Public Interest</u>

As Futaba aptly stated, all the parties are "sparrows in a hurricane." A number of factors – beyond the control of any of the parties – led to the worldwide shortage of semiconductors. The harm is widespread and the industry writ-large is suffering. While JVIS brings the possibility of a work stoppage to the court's attention if it does not obtain its supply, any cure (if even possible) of JVIS's supply shortfall would likely result in work stoppage for others. Indeed, as the defendants indicate in their briefs, those stoppages have already begun to ripple through the industry, as widely reported in the media. Even more importantly, defendants have brought forth evidence that the semiconductors simply are not available. This would leave defendants in the position of being unable to comply with the court's order. The court will not order defendants to take action that they are simply unable to take, based on circumstances entirely outside their control. The defendants' inability to comply with such an order also impacts the public interest as it is neither in the court's interest or the public's interest to issue an unenforceable order. The balance of harms weighs against granting injunctive relief.

## III.   ORDER

As discussed above, an analysis of all four factors weigh against issuing injunctive relief in plaintiff's favor.  For the reasons set forth herein and on the record at the April 16, 2021 hearing, plaintiff's motion for temporary restraining order is **DENIED**.

**IT IS SO ORDERED**.

Date: April 16, 2021　　　　　　　　　　　s/Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　　　Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　　　United States District Judge